Overman v. Hoboken City Bank.

HENRY L. OVERMAN v. THE HOBOKEN CITY BANK.

1. A check drawn to the order of plaintiffs upon the defendants, was deposited in the Bank of Commerce in the city of New York, and, by that bank transmitted to the Ocean Bank to be sent to the defendants for payment. It was received by defendants on the 31st October, between 12 and 1 o'clock A. M., and retained by them until 12 o'clock noon, the following day, when it was returned to the Ocean Bank, marked "not good." On the following morning about 10 o'clock, the Ocean Bank returned the check to the Bank of Commerce, which immediately notified the plaintiff of its dishonor.

   *Held*, that the mere retention of the check by the defendants did not constitute an acceptance on their part, upon the ordinary principles of the law merchant.

2. Customs and special usages of trade which narrow and confuse the operations of the general rules of law, should be construed strictly, and should not be extended to persons who are not clearly proved to have acted under them.

3. Proof of usage by banks, which are members of the clearing-house in the city of New York, in regard to the return of checks drawn on banks in the city, is not applicable to checks drawn on banks at a distance.

Error to the Circuit Court of the county of Hudson.

For plaintiff, *S. B. Ransom.*

For defendants, *J. H. Lyons* and *I. W. Scudder.*

BEASLEY, CHIEF JUSTICE. This suit was brought on a check drawn upon the defendants by Messrs André Brothers to the order of the plaintiff. The check was dated October 29th, 1859, and was for the sum of $2730. On the trial of

the cause at the circuit, the court ruled that there was no evidence before the jury of an acceptance of this check, and in accordance with that instruction a verdict was found for the defendants.

The single question before this court now is, was the judge correct in his view that there was no evidence from which the jury had the right to infer, either upon the general principles of the commercial law or from the local usage which is claimed to have been proved in the case, that the check in question had been accepted by the defendants?

On the day of the date of the check, as appears from the undisputed testimony in the cause, the plaintiff deposited it in the Bank of Commerce, of the city of New York, to be transmitted for presentation to the defendants. The Bank of Commerce, with the same view, passed it to the Ocean Bank of the same city, by which, on the thirty-first day of October, between the hours of twelve and one A. M., it was delivered to the messenger of the defendants. The check so received was retained by the defendants until the following day, when about the hour of twelve o'clock, noon, they returned it marked "not good" to the Ocean Bank. On the following morning at about ten o'clock, the Ocean Bank returned the check to the Bank of Commerce, which immediately notified the plaintiff of its dishonor.

It thus appears that the check in question was retained by the defendants after the same came to them for payment for a period a little short of twenty-four hours, before it was returned to the hand from which they received it.

The first question to be decided in the case is, does this delay to make return of the check raise an implied acceptance on the part of the defendants by force of the ordinary principles of the law merchant?

There can be no doubt that the drawee of a bill of exchange or check, can so deal with it that, although he make no express acceptance, the law, with an eye to the public interest, will infer an acceptance on his part. Thus if such drawee were to return the bill in his possession contrary to the usual

mode of intercourse between himself and the holder, and under such circumstances as to induce a reasonable belief that it had been honored, such conduct might amount in law to a constructive acceptance. But no case was cited upon the argument, and none has been found, in which it was ruled that a mere retention of the bill by the drawee, such retention being unqualified by any adventitious circumstance, such as a usage of trade or an understood mode of intercourse between the parties, will by intendment of law, be considered equivalent to an acceptance of such bill. Treating the subject on principle, we must arrive at the opposite result. It is the business of the holder of the bill of exchange or check to present it for acceptance or payment. Upon such presentation, the drawee has a reasonable time to inspect his accounts and ascertain whether he is in funds to meet the demand ; and it has been said that such reasonable time is the space of twenty-four hours. *Bellasis* v. *Hester*, 1 *Ld. Raym.* 280. After the lapse of this reasonable time, whatever period that may be, the holder of the bill has a right to know whether the bill is accepted or dishonored. But it is his duty to wait upon the drawee to ascertain this. If, therefore, in the ordinary course of commercial business, an holder of a bill leave it with the drawee, or send it to him by mail, and such holder do not, after the efflux of a reasonable time, call for such bill, so as to ascertain whether it has been accepted or not, there is nothing in such transaction upon which to raise or imply an engagement to accept, or a contract of acceptance. In the same manner if a check, instead of being presented at the counter of a bank by the holder or his agent, should be forwarded by mail, such bank, it is conceived, in the absence of any established course of dealing between itself and such holder, would be under no obligation to return such check, but could safely wait in silence the further action of such holder. In the case of *Jeune* v. *Ward*, 2 *Stark.* 326, the bill had been retained by the drawee over a month, and Lord Ellenborough, at Nisi Prius, had permitted a recovery as on an acceptance, having

put the case to the jury on the broad ground that it was the duty of the drawee to return the bill to the holder. But the Court of the King's Bench, considering this a misdirection, granted a new trial, and Mr. Justice Bayley, in his opinion delivered on that occasion, thus expresses his view of the law : " Where a bill of exchange is left for acceptance, in the ordinary course of commercial transactions, it is the duty of the party to call for it within a reasonable time, in order to ascertain whether it has been accepted or not ; unless, as in one of the cases cited, some other and peculiar course of dealing has been established between the parties." The same rule is laid down by Chitty, in these words : " But it would seem that the mere detention of a bill, for an unreasonable time, by the drawee, will not amount to an acceptance, although the drawee disfigure, cancel or destroy the bill. And, by the usage of trade in London, a check may be retained by a banker on whom it was drawn, till five o'clock in the afternoon of the day on which it is presented for payment, and then returned, though it has been previously cancelled by mistake. And constructive acceptances ought to be watched with the utmost care, for when a party puts his name on a bill he knows what he does, and that he thereby enters into a contract ; but it is laying down a very loose and dangerous rule, when any degree of latitude is given to these constructive acceptances. The cases which have been determined in favor of these constructive acceptances have all been decided upon very special circumstances." *Chitty on Bills* 175. Equally clear and explicit is the language of Judge Parsons. He says : " We think, however, both on authority and reason, that mere detention or delay should not, of itself and alone, be considered as the equivalent of acceptance." 2 *Pars. on Bills and Notes* 284.

Applying the principle, sustained by these authorities, to the point now considered, it is clear that the delay of the defendants in returning the check in question was not of such character that the law will imply from it an acceptance.

The plaintiff, therefore, was not entitled to recover on this ground.

But it was further urged on the argument, that the defendants had placed themselves, with regard to this check, in the position of a member of the clearing-house of New York, and that consequently they are bound by the usages of that association; and that one of such usages requires dishonored checks to be returned to the party from whom they were taken, on the day of their receipt, or through the clearing-house on the following day.

It appears from the testimony, that the Bank of Commerce and the Ocean Bank were both members of the clearing-house, and that the latter bank was the agent of the defendants in the city of New York for the redemption of their circulating bills, and that on the 5th May, 1857, they had given notice, to that effect, by advertisements in the public prints, and that such advertisements also contained a statement to the effect that checks on the defendants, received in the exchanges, "not good" would be returned through the same channel. Under this notice, from the time of its publication to the period of the transaction in question, the Ocean Bank was in the habit of receiving, at the clearing-house, in making its exchanges, all checks drawn on the defendants in the same manner as it did checks drawn on itself or other banks of the city. The proofs further showed that it was the ordinary usage for the banks, that were members of this association, when they received, through their exchanges, any check or bill of exchange, drawn on a bank of the city of New York, and when such bill or check was dishonored, to return it the same day on which it was received, or, at the furthest, through the clearing-house in their exchanges of the day following.

Admitting, for the moment, that the usage above stated applies to the check in question, let us see, under this condition of affairs, what were the rights and responsibilities of the respective parties.

By the notice above referred to, the Ocean Bank offered to receive all checks drawn upon the defendants, and passed to

it through the clearing-house for the purpose of transmission, agreeing to make return through the same channel. Did the Ocean Bank make this offer as the agent of the defendants? There is no evidence that it did so. No attempt was made to show that the notification was authorized by the defendants, but on the contrary, the president of the defendants testified, and it was the only evidence on the subject, that he was not aware of it. It was made in the name of the Ocean Bank and seemed to bear no indicia of agency about it. Being the agent of the defendants to redeem their bills and drafts, it was for the ease of the Ocean Bank, but of no benefit whatever to the defendants, both to receive and return the bills and checks through the clearing-house of which it was a member. Hence the notice that it would do so—and in this way the check in question came to its hands. But can there be any question that if it had failed altogether to transmit this check to the defendants, and the money had been lost by this means, that it, the Ocean Bank, would have been responsible for such loss to the Bank of Commerce, who had entrusted it with the check? This result seems undeniable, and yet, on the notion that it was acting as the agent of the defendants, no such liability attached. Moreover the entire system on which the business of the clearing-house is transacted is inconsistent with the theory that any of the members, in their transactions with each other, are the agents of parties who are not members. They trust each other as principals, and hence the facility with which that immense business is transacted. If each member were bound, as in ordinary business, to stop to inquire into the fact of agency, and the responsibility of principals, the association could not profitably live a day. Besides, if the several members have the power, in any given transaction in the clearing-house, of acting for a stranger to the institution, and in his behalf and name, such stranger, *pro hac vice*, would stand in the position of a member—a circumstance repugnant to the nature of the organization of the association, as it is represented to this court in the evidence. I think it is manifest then that it was

the undertaking of the Ocean Bank, and not of the defendants, to receive and transmit that species of checks, of which that in controversy is one, through the clearing-house, and that, as a consequence, all the liabilities of such an undertaking must fall on that bank alone. The result then would be, on the assumption already made, that this check is within the alleged usage; that as such check was not returned within the conventional period, the Ocean Bank was in default, and became responsible to the Bank of Commerce for the consequences. And in the event of such result it would seem that the Ocean Bank would have no remedy against the defendants to recover back the loss which might thus fall upon it, for the evidence most clearly shows that they, the defendants, have complied, strictly, with the engagement into which they entered. It is very clearly established that the defendants were instructed by the Ocean Bank, that they might return their dishonored paper at a late hour on the day after it was received, and if it be true, that the obligations of the Ocean Bank required such paper to be passed through the clearing-house at an earlier period than the return thus arranged would admit of, such arrangement was the folly of the Ocean Bank, and can cast no loss on the defendants. Customs and special usages of trade, which narrow and also confuse the operations of the general rules of law, should be construed strictly, and should not be extended to persons who are not clearly proved to have acted under them. The defendants have a right to insist, that their business was conducted in accordance with the established rules of law—and as it does not appear that they ever agreed, either expressly or impliedly, to regulate that business by any other standard, it seems to me that such insistment must prevail.

But waiving the above argument, and adopting the opposite hypothesis, that the Ocean Bank was the agent of the defendants in such a sense as to make the defendants subject to all the usages of the clearing-house, still, it appears very evident, that the proofs do not show that the plaintiff has any cause of action against them.

There is a radical defect in the evidence of the plaintiff. It is this: the usage which he has endeavored to prove does not embrace the check in question, or any checks of a similar character. The check sued on is drawn on the defendants, who are residents of Hoboken, in this state. The usage proved is, that the members of the clearing-house are in the habit of returning checks drawn on banks within the city of New York in a certain limited period. There is no testimony whatever as to what the usage is when a check has the characteristics of the one now in suit. No witness has stated, nor is there any intimation in the case, to show within what time a check drawn upon a bank out of the city of New York, must be returned by the usage of the clearing-house. It is obvious, in the nature of things, that the same rule, limiting the time within which dishonored checks are required to be sent in, cannot apply to checks drawn on city banks and to those drawn on banks at a distance.

On these grounds it appears to me that there is no error apparent on the record or in the charge of the court, and that, therefore, the judgment below should be affirmed.

*For affirmance*—BEASLEY, C. J., CORNELISON, ELMER, FORT, GREEN, CH., HAINES, KENNEDY, VAN DYKE, VREDENBURGH, WALES.    10.

*For reversal*—NONE.